IN RE APPLICATION OF KOHLER.

[Cite as *In re Application of Kohler,* 115
Ohio St.3d 11, 2007-Ohio-4261.]

(No. 2007-0458—Submitted June 6, 2007—Decided August 29, 2007.)

---

**Per Curiam.**

{¶ 1} Applicant, Nathan J. Kohler, is a May 2005 graduate of the Northern Kentucky University Chase College of Law. After attempting to pass the Ohio bar examination administered in July 2005, Kohler passed the February 2006 bar exam. He has not been admitted to the Ohio bar, however, because of allegations that he deceived partners and clients of the law firm where he formerly worked as a law clerk. Upon notice of these allegations, the Board of Commissioners on Character and Fitness invoked its continuing investigative authority under Gov.Bar R. I(10)(B)(2)(e) and appointed a panel to reexamine Kohler's character, fitness, and moral qualifications for bar admission.

{¶ 2} After a hearing, the board panel recommended that Kohler be disapproved for bar admission and that he not be permitted to reapply as a candidate for the bar until February 2008. The board adopted the panel's recommendation. On review, we agree that Kohler has failed to prove his present character, fitness, and moral qualifications by the requisite clear and convincing evidence and accept the board's recommendation.

### Kohler Misled Clients and His Employer

{¶ 3} In April 2006, Joseph A. Butkovich, senior managing partner of Butkovich, Crosthwaite & Gast Co., L.P.A. ("the Butkovich firm"), advised this court's Office of Bar Admissions in a letter that Kohler had resigned from the law firm after making various misrepresentations to clients and his supervising attorney. Shortly thereafter, Bar Admissions notified Kohler of his passing score on the bar exam, but also that the board had reopened the investigation of his character and fitness sua sponte, based on the allegations of his former employer. Kohler admitted his wrongdoing to his employer and later during the panel hearing.

{¶ 4} The Butkovich firm, a Cincinnati law practice concentrating largely in workers' compensation, but also serving clients in personal injury, Social Security disability, and bankruptcy law, hired Kohler in October 2003. Kohler worked as a law clerk for the firm until graduation from law school, when the firm offered him a permanent position as an attorney, contingent upon his passing the bar examination. By hiring Kohler, members of the firm planned to expand their bankruptcy practice under the supervision of partner Robert E. Hof.

{¶ 5} The Butkovich firm retained Kohler as a law clerk even though he did not pass his first bar exam. At some point, Kohler attended a seminar with Hof in federal bankruptcy court about the use of the court's electronic filing system and the changes in consumer bankruptcy law effective October 17, 2005. The Butkovich firm also bought software for electronic filing and assigned Kohler the responsibility for effecting these transmissions and for overseeing the firm's e-mail account with the bankruptcy court.

{¶ 6} Responding to letters advising of the Butkovich firm's plans to expand its practice, four clients hired the firm to represent them in their respective bankruptcy cases. Though Kohler was expected to prepare and file the necessary paperwork for these clients before the October 17 deadline, he filed nothing in their cases, all the while reporting to the clients and Hof that he had. Kohler misled the clients and his supervisor from October 2005 until March 8, 2006, by repeatedly lying in response to requests for status reports. He fabricated documents, including two notices for creditor meetings and a court order allowing a continuance of a creditor meeting, complete with a forged signature purporting to be that of the bankruptcy court clerk.

{¶ 7} Finally, on March 8, 2006, Kohler asked for a private meeting with Butkovich and confessed his inaction and misrepresentations. Kohler attributed his wrongdoing to alcohol abuse. After the meeting, he immediately consulted Robert T. Williams, a case manager and therapist at St. Elizabeth Medical Center, who is a licensed clinical social worker with a bachelor's degree in psychology and a master's degree in social work.

{¶ 8} Williams assessed Kohler for substance abuse and determined that he did not have an addiction to alcohol but that he did suffer from stress-related symptoms. Williams continued to treat Kohler until August 2006, counseling him in relaxation and other stress-management techniques, and then released him from therapy. Kohler has not sought any additional medical care.

{¶ 9} Kohler offered his resignation on March 8, 2006, and the Butkovich firm accepted. The firm also advised the clients misled by Kohler to consult independent legal counsel as to whether the Bukovich firm had committed malpractice. Hof testified that these clients were not affected by the changed bankruptcy laws,

and in fact, none of them had filed claims against the Butkovich firm as of the October 5 and 24, 2006 panel hearings in this case.

## The Board Properly Disapproved Kohler's Bar Admission Application Based on his Character and Fitness

{¶ 10} Honesty is the cornerstone of all obligations incumbent upon members of the legal profession. Candidates seeking admission to the Ohio bar will be denied admission unless, at a minimum, "the applicant's record of conduct justifies the trust of clients, adversaries, courts, and others with respect to the professional duties owed to them." Gov.Bar R. I(11)(D)(3). Evidence of a candidate's having made a single false statement or having committed any act of dishonesty, fraud, deceit, or misrepresentation is enough to disqualify the application. Gov.Bar R. I(11)(D)(3)(h) and (i).

{¶ 11} In disapproving Kohler's application, the board observed that his record did not warrant such trust:

{¶ 12} "He made numerous false representations to clients and to the law firm; he created bogus documents to conceal his false statements; and he continued to engage in such conduct for months. While ultimately and fortunately it does not appear that the clients suffered injury, the legal profession did. Four individuals who put their trust in lawyers to help them resolve problems were deceived by Mr. Kohler. It is not hard to imagine how suspiciously those four persons must view lawyers after that experience.

{¶ 13} " * * *

{¶ 14} "To his credit, at the panel hearing, Mr. Kohler was more honest and direct. He admitted he had done the 'wrong thing.' He admitted that when he missed the deadline for filing under the prior bankruptcy law, he knew that he should have advised the clients and the law firm. He admitted that he had no good excuse for his egregious behavior. While Mr. Kohler noted that, at the time, he felt overwhelmed by his family responsibilities, his work obligations, and the pressures of taking and retaking the bar exam, he also acknowledged that none of these justified what he did. This Board agrees. His misleading and deceitful behavior over a period of months is the very antithesis of the honesty, trustworthiness, and reliability required by Rule I."

{¶ 15} Applicants must prove with clear and convincing evidence that they possess the requisite character, fitness, and moral qualifications for admission to the practice of law in this state. Gov.Bar R. I(11)(D)(1). Kohler has not satisfied this burden. We therefore adopt the board's recommendation and disapprove his application for admission at this time.

{¶ 16} We do not, however, bar Kohler from ever applying again. Kohler has recognized the gravity of his transgressions and has shown overwhelming contri-

tion. Moreover, as counsel for the bar association argued to the panel, Kohler's misrepresentations resulted in large part from inexperience. He essentially agreed to spearhead his law firm's foray into a new field with fairly minimal oversight from the partner experienced in that field. In doing so, Kohler unwittingly accepted more responsibility than any recent law school graduate ever should over cases he was not yet equipped to manage without close supervision. Kohler thus made the mistake that many new lawyers make—he failed to realize until it was too late that the practice of law is more complex than law school exercises.

{¶ 17} Although no justification can exist for Kohler's dishonesty or the fact that he concealed it for months, ultimately he did report his actions to his superiors. Because Kohler, with genuine remorse, accepted the consequences of his mistakes, we believe that he may yet establish that he has the character, fitness, and moral qualifications to practice law.

{¶ 18} We therefore also accept the board's recommendation that Kohler be permitted to reapply for admission to the practice of law in Ohio as of February 2008. Upon reapplication, Kohler need not retake the Ohio bar examination; however, he must undergo the character-and-fitness process anew, including being interviewed and completing all other requirements necessary for approval of his qualifications by the Cincinnati Bar Association and the board.

Judgment accordingly.

MOYER, C.J., PFEIFER, LUNDBERG STRATTON, O'CONNOR, O'DONNELL, LANZINGER and CUPP, JJ., concur.

————————

Taft, Stettinius & Hollister and W. Timothy Miller, for Cincinnati Bar Association.

Nathan J. Kohler, pro se.