**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *In re Application of Dempsey*, "Slip Opinion" No. 2025-Ohio-5059.]**

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports. Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2025-OHIO-5059

IN RE APPLICATION OF DEMPSEY.

**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *In re Application of Dempsey*, "Slip Opinion" No. 2025-Ohio-5059.]**

*Attorneys—Character and fitness—Gov.Bar R. I(11)—Application for admission to practice of law in Ohio by transferred Uniform Bar Exam score—Gov.Bar R. I(13)(D)(3)—Abandonment of employment and clients, falsification of documents, general dishonesty, and lack of candor—Application disapproved but applicant permitted to reapply after July 1, 2026.*

(No. 2025-0402—Submitted May 13, 2025—Decided November 12, 2025.)

ON REPORT by the Board of Commissioners on Character and Fitness of the Supreme Court, No. 899.

_____

The per curiam opinion below was joined by KENNEDY, C.J., and FISCHER, DEWINE, BRUNNER, DETERS, HAWKINS, and SHANAHAN, JJ.

**Per Curiam.**

{¶ 1} Applicant, Kristen Elise Dempsey, of Zanesville, Ohio, is an Ohio native and a 2021 graduate of the Seattle University School of Law. Dempsey applied to take the Uniform Bar Exam ("UBE") in Washington, sat for the UBE in July 2021, and passed on her second attempt in February 2022. However, she chose not to apply for admission to the Washington bar and transferred her UBE score to Oregon, where she was admitted in November 2022.

{¶ 2} On November 1, 2023, Dempsey filed an application for admission to the Ohio bar by transferred UBE score under Gov.Bar R. I(11). At that time, she was in good standing with the Oregon bar. Dempsey previously had filed an application to transfer her UBE score to Illinois, where a character-and-fitness investigation was ongoing in December 2023.

{¶ 3} Two members of the Muskingum County Bar Association Admissions Committee interviewed Dempsey in March 2024. The interviewers' reports to the admissions committee stated that Dempsey did not possess the requisite character, fitness, and moral qualifications for admission to the practice of law in Ohio. One interviewer recommended that Dempsey not be accepted for admission to the practice of law, while the other interviewer declined to give a yes or no answer and instead offered that Dempsey should not be accepted for admission without "further inquiry."

{¶ 4} Both interviewers cited serious accusations made by two Oregon attorneys whose firm had employed Dempsey regarding her abandonment of her employment and clients, falsification of documents, and general dishonesty. The interviewers also expressed concerns about Dempsey's lack of candor in responding to those accusations. In addition, one of the interviewers noted that two of Dempsey's character references indicated that they did not know or had no opinion regarding whether Dempsey was honest, trustworthy, diligent, and reliable or whether she should be admitted to the Ohio bar.

{¶ 5} Based on the reports of the interviewers, the admissions committee issued a report recommending that Dempsey's application be disapproved as to her character and fitness. Dempsey appealed that recommendation to the Board of Commissioners on Character and Fitness under Gov.Bar R. I(14)(B).

{¶ 6} A three-member panel of the board conducted a hearing in January 2025. Dempsey was the sole witness. Thereafter, the panel issued a report finding that Dempsey had failed to establish by clear and convincing evidence that she has the present character, fitness, and moral qualifications to practice law in Ohio. In addition to disapproval, the panel recommended that Dempsey be permitted to reapply for admission after July 1, 2026. The board unanimously adopted the panel's report and recommendations.

{¶ 7} Having reviewed the record, we adopt the board's recommendation to disapprove Dempsey's pending application for admission to the Ohio bar but will permit her to reapply after July 1, 2026.

**Facts**

{¶ 8} In July 2022, a few months prior to her admission to the Oregon bar, Dempsey was hired by Schantz Fanning, P.C., a domestic-relations firm, and remained employed there until September 2023. Attorneys Laura Schantz and Christopher Fanning provided written statements to the National Conference of Bar Examiners ("NCBE") regarding Dempsey's employment at the firm.

{¶ 9} Schantz wrote that in many ways, Dempsey had "do[ne] a great job" at the firm. Dempsey was well liked by her clients and seemed to be resolving their legal matters. But Schantz noted a few instances of questionable behavior. For example, she reported that Dempsey missed a lot of work and was unwilling to be mentored or "have accountability [for] what was going on with her cases."

{¶ 10} Schantz also reported that Dempsey had once abandoned her job for eight days, claiming that she had a "family emergency." Thereafter, Schantz and others attempted to communicate with Dempsey but found that her phone had been

turned off. Schantz stated that after the firm sent Dempsey an email informing her that her colleagues would need to contact her clients and start preparing for four trials scheduled for the following week, Dempsey quit, effective immediately. According to Schantz, Dempsey stated that she had been served with divorce papers and was moving out of state.

{¶ 11} But Schantz found that in several respects, Dempsey misrepresented the circumstances of her departure from the firm. For example, Schantz checked the court's online docket and found that no divorce case had been filed, though she later discovered that Dempsey had started to draft a divorce petition on her work computer. And while Dempsey had stated that she was ready for the four upcoming trials, Schantz found that no trial memoranda had been prepared, that one of Dempsey's clients did not even know that a trial had been scheduled, and that her other clients had not heard from her for "a[ ]while."

{¶ 12} Schantz also reported that one of Dempsey's clients had informed the firm that the final judgment entered in her case was not the same document that she had signed. Schantz stated that after further investigation, it appeared that Dempsey made changes to the document after the parties and attorneys had signed it and that none of the signatories were aware of the changes.

{¶ 13} In the statement he provided to the NCBE, Fanning reported that in addition to some of the concerns highlighted by Schantz, Dempsey "appear[ed] to have added signatures of two parties and opposing counsel to a draft of a judgment that the parties and opposing counsel never signed."

{¶ 14} During her character-and-fitness hearing, Dempsey acknowledged that it was inappropriate for her to walk out on her employment and her clients. She suggested that her actions resulted, at least in part, from the fact that she had been a victim of domestic violence. She described a September 2023 incident that left her with a nearly severed thumb and broken tooth.

{¶ 15} Dempsey further testified that she was traumatized by the incident and that she therefore made the decision to get a divorce and move back to Ohio. She acknowledged that she did not return to work or communicate with the firm about her pending cases. However, Dempsey denied Fanning's allegations that she had added the signatures of two parties and opposing counsel to a draft judgment entry and that she had altered documents without her clients' knowledge. She claimed that her clients trusted her, that she communicated with them during her absence from the office, and that she was continuing to work on their matters remotely.

{¶ 16} Dempsey also categorically denied that her clients had trials or hearings scheduled for the week after she departed the firm. She did, however, acknowledge that issues could have arisen during her eight-day absence and that she did not respond to communications she received from her colleagues during that time. She also testified that she believed she "had gotten everything pretty squared away with [her] cases to where [her absence] wasn't going to be a problem." Her testimony led the board to believe that "she may have been planning to leave her employer earlier than she originally testified." When questioned by bar counsel about the contradictions between her testimony and the allegations of Schantz and Fanning, Dempsey stated that she believed that they were lying.

{¶ 17} Bar counsel also asked Dempsey about an answer she had given to a question she was asked during her admissions-committee interview. When questioned during that interview about the allegations that she had forged signatures on a draft judgment, Dempsey stated that she did not know how to do so. Dempsey clarified this answer during questioning by her own counsel at her character-and-fitness hearing, testifying that the firm did not use paper documents and was "100 percent electronic" and that any documents that required a client's signature were "sent to them over Adobe." She explained that when she told the admissions-

committee interviewers that she did not know how to forge signatures, she meant that she "didn't know how to forge a signature using Adobe or anything electronic."

{¶ 18} On cross-examination, bar counsel—who had also served as one of the admissions-committee interviewers—revisited this testimony as follows:

Q. When we asked you that question about the forging of signatures, . . . you answered you didn't know how to do that. [We] asked you what do you mean by that and isn't that a strange answer to that question. And you didn't respond further to that, did you?

A. I—the question was never followed up on.

Q. And so you didn't think it was a good idea to explain that you meant you didn't know how to forge a signature using Adobe?

A. No. I was extremely upset by the whole situation at that point. Yeah. I wasn't probably thinking as clearly as I could have been.

{¶ 19} Upon subsequent questioning by the panel chair, Dempsey maintained that the admissions-committee interviewers did not ask any follow-up questions about her claim that she did not know how to forge a signature. And when the panel chair asked whether she was saying that bar counsel was not telling the truth, Dempsey implied that the interviewers had been lying, stating, "There was no follow-up after I said that, no, or I would have explained exactly what I just said."

{¶ 20} In addition to Schantz and Fanning, two character references offered no opinion regarding Dempsey's honesty, trustworthiness, diligence, and reliability. They also declined to offer their opinion on whether Dempsey should be admitted to the Ohio bar. One of the references was a former classmate who knew Dempsey for a year and a half in law school, and the other was a family friend

and practicing attorney who had known Dempsey for ten years. After speaking with Dempsey following her admissions-committee interview, the family friend sent the Office of Bar Admissions a letter stating that she believed that her answers had been misinterpreted and that her comments "should not be construed in a negative manner, or in a way that would prohibit [Dempsey's] admission to the Ohio bar."

{¶ 21} When questioned about the responses submitted by these two character references, Dempsey stated that she did not know and could not speculate as to why her law-school classmate would have responded "unknown" to the two opinion questions. With respect to the family friend, Dempsey claimed that the reason the friend did not have an opinion on Dempsey's honesty, trustworthiness, diligence, and reliability was that they had never worked together.

{¶ 22} We note that in addition to the concerns raised by the admissions-committee interviewers and the board, Dempsey testified during her character-and-fitness hearing that she had never applied for admission to the Illinois bar. That testimony, however, is in direct conflict with information she provided on her application for admission to the Ohio bar. It also directly conflicts with a December 2023 report that the Illinois Board of Admissions to the Bar sent to the NCBE, which states that Dempsey filed an application to transfer her UBE scores in September 2023 and that the application remained pending.

{¶ 23} Although Dempsey acknowledged that she did not leave the Schantz firm in a professional manner, the board found that she had not demonstrated a true understanding of the damage that could have resulted from the abandonment of her clients. Despite Dempsey's testimony that she had commenced counseling and was diagnosed with posttraumatic stress disorder and anxiety in May or June 2024, the board noted that "[s]he continued to blame her inconsistent testimony on her stress from being under pressure, including the pressure of the hearing."

**{¶ 24}** Finding that Dempsey "convey[ed] a version of the truth that may or may not be the entire truth" and that she "rarely took full responsibility for any of her actions," the board was not convinced that she had reached a point at which her stress would not negatively impact her decision-making or representation of clients. However, the board expressed its belief that with time, Dempsey would be able to demonstrate positive changes in her life, along with a deeper understanding of the duties that lawyers have to their clients and the need for honesty and full disclosure in the admissions process. The board therefore recommends disapproval and that Dempsey be permitted to reapply for admission to the Ohio bar no earlier than July 1, 2026.

### Disposition

**{¶ 25}** An applicant for admission to the Ohio bar bears the burden of proving by clear and convincing evidence that the applicant possesses the requisite character, fitness, and moral qualifications for admission to the practice of law. Gov.Bar R. I(13)(D)(1). An applicant may be approved for admission if the applicant satisfies the essential eligibility requirements for the practice of law as defined by the board and demonstrates that "the applicant's record of conduct justifies the trust of clients, adversaries, courts, and others." Gov.Bar R. I(13)(D)(3).

**{¶ 26}** Applicants must establish their abilities to communicate clearly with clients, attorneys, courts, and others; to exercise good judgment in conducting their professional business; to conduct themselves with a high degree of honesty, integrity, and trustworthiness; to conduct themselves diligently and reliably in fulfilling their obligations; and to conduct themselves professionally and in a manner that engenders respect for the law and the profession. Supreme Court of Ohio, "Definitions of Essential Eligibility Requirements for the Practice of Law" (Nos. 2 through 4, 7, and 10), https://www.supremecourt.ohio.gov/attorneys

/admission-to-the-practice-of-law-in-ohio/admission-applications/essential-eligibility-requirements/ (accessed Oct. 16, 2025) [https://perma.cc/9BSH-8GQ3].

{¶ 27} A record that manifests a significant deficiency in an applicant's honesty, trustworthiness, diligence, or reliability may constitute grounds for disapproval. Gov.Bar R. I(11)(D)(3). In determining whether an applicant's record demonstrates a deficiency in the applicant's character and fitness, we consider a number of factors, including whether the applicant has failed to provide complete and accurate information concerning the applicant's past; whether the applicant has made false statements, including omissions; whether the applicant has engaged in acts involving dishonesty, fraud, deceit, or misrepresentation; and whether the applicant has neglected professional obligations. *See* Gov.Bar R. I(13)(D)(3)(f) through (h) and (k).

{¶ 28} Avoiding or shading the truth during character-and-fitness proceedings constitutes a false statement or omission for purposes of the rules governing admission to the bar. *In re Application of Howard*, 2006-Ohio-5486, ¶ 9; *see also* Gov.Bar R. I(13)(D)(3)(f) through (h). Moreover, "[e]vidence of a candidate's having made a single false statement or having committed any act of dishonesty, fraud, deceit, or misrepresentation is enough to disqualify the application." *In re Application of Kohler*, 2007-Ohio-4261, ¶ 10.

{¶ 29} In this case, Dempsey abandoned her employment and her clients approximately two months before she filed her application for admission to the Ohio bar. She was not entirely honest with her employers regarding the reasons for her sudden departure and did not respond to their efforts to communicate with her regarding the status of her clients' legal matters. Throughout her character-and-fitness hearing, Dempsey denied her former employers' allegations. But she has offered no evidence beyond her own testimony to support her denials, and the panel members who heard that testimony did not find all of it to be credible.

**{¶ 30}** On these facts, we find that Dempsey has failed to carry her burden of proving by clear and convincing evidence that she currently possesses the requisite character, fitness, and moral qualifications to practice law in Ohio. We acknowledge, however, that Dempsey has taken steps to make positive changes in her life by divorcing her abusive husband, returning to her family in Ohio, and commencing counseling. We believe that with additional time, Dempsey may be able to prove that she has the requisite qualifications to practice law in this State, and we will permit her to reapply for admission no earlier than July 1, 2026.

### Conclusion

**{¶ 31}** Accordingly, we disapprove Dempsey's application for admission to the Ohio bar by transferred UBE score and will permit her to reapply no earlier than July 1, 2026.

Judgment accordingly.

_____

Jonathan E. Coughlan, for applicant.

Stubbins, Watson, Bryan & Witucky, Co., L.P.A., and Michael T. Bryan, for the Muskingum County Bar Association.

_____