OHIO PARTNERS FOR AFFORDABLE ENERGY, APPELLANT, *v.* PUBLIC
UTILITIES COMMISSION OF OHIO ET AL., APPELLEES.

[Cite as *Ohio Partners for Affordable Energy v. Pub. Util.
Comm.*, 115 Ohio St.3d 208, 2007-Ohio-4790.]

(No. 2006–1633—Submitted July 10, 2007—Decided September 20, 2007.)

O'DONNELL, J.

## Background

{¶ 1} This is an appeal as of right filed by Ohio Partners for Affordable Energy ("OPAE"), an advocacy group that seeks affordable energy policies for low- and moderate-income Ohioans, from an order of the Public Utilities Commission of Ohio ("commission" or "PUCO").

{¶ 2} This case involves the East Ohio Gas Company, d.b.a. Dominion East Ohio Gas ("Dominion"), its efforts to change the way it purchases natural gas, and the way the PUCO reviews that action. Dominion asked the PUCO to grant an exemption from the gas cost recovery review process so that Dominion could use third-party suppliers to buy the gas Dominion provides its customers, permitting Dominion to focus solely on distributing gas to consumers. A large number of customers on Dominion's distribution system currently receive their natural gas from existing third-party suppliers. This effort addresses customers still receiving the commodity from Dominion.

{¶ 3} Dominion filed its application on April 8, 2005, proposing to restructure its obligation to secure gas and to expand retail choice options for its customers in two phases. Natural gas companies make their rate of return on the distribution of natural gas, not on the buying and selling of the commodity. The regulatory system is designed to pass the cost of the natural gas to consumers. Pursuant to R.C. 4905.302, rates charged by natural gas companies can adjust to ensure that the company recovers only the price it reasonably paid to acquire the natural gas it distributes to its customers.

{¶ 4} Phase 1 of Dominion's application proposed an interim wholesale model by which Dominion would continue to provide commodity service for a pilot period using an auction process to obtain its wholesale gas supplies. Dominion

would remain the supplier and would retain provider-of-last-resort ("POLR") responsibilities in case any of Dominion's competitors default on the obligation to provide gas to customers.

{¶ 5} Phase 2 of the plan remains undeveloped, but Dominion's stated goal is to transfer any remaining customers served by Dominion's standard service offer to competitive suppliers at the end of Phase 2. Dominion will then place the customer in a direct business relationship with the supplier instead of with Dominion, which will retain only minimal POLR responsibility.

{¶ 6} The PUCO sought public comments on Phase 1 of Dominion's proposal. After reviewing the comments, the PUCO determined that Dominion's request amounted to a request for an exemption from the gas purchasing review process specified in R.C. 4905.302. In order to look at the request in greater detail, the PUCO elected to treat Dominion's tariff change application as an application for an exemption under R.C. 4929.04, which sets forth the conditions for exemption of natural gas companies from certain rate provisions. The granting of an exemption from these regulatory requirements under R.C. 4929.04(A) requires notice of the request, public comments, and a hearing. Under this provision, the PUCO can exempt a natural gas company's commodity sales service or other ancillary service from a myriad of regulations, including R.C. 4905.302, which addresses how natural gas companies adjust their rates.

{¶ 7} The PUCO limited its review to Phase 1 of Dominion's application. The parties to the proceeding, including OPAE, filed testimony, and the PUCO held an evidentiary hearing on December 6 and 7, 2005. On the second day of the hearing, Dominion entered into a stipulation with the Ohio Oil and Gas Association and the participating gas supplier groups. The stipulation modified the proposed auction process by reallocating the charge for choice-related customer education costs from consumers to suppliers.

{¶ 8} The commission determined that the record supported granting Dominion an exemption from R.C. 4905.302. *In re Application of E. Ohio Gas Co. for Approval of Plan to Restructure Its Commodity Serv. Function* (May 26, 2006), PUCO No. 05–474–GA–ATA. The PUCO decision established a bid process to determine the retail price adjustment. The adjustment is to be added to the New York Mercantile Exchange price of natural gas to produce the standard service offer price. The PUCO established a range of $2.196/Mcf to $2.504/Mcf [1] as a reasonable result for the adjustment from the auction.

{¶ 9} On August 29, 2006, Dominion held the auction to determine the standard service offer as approved by the PUCO. The auction resulted in a retail price

---

1. Mcf is a unit of gas equal to 1000 cubic feet, the traditional measurement used for natural gas. One Mcf equals the heating value of 1,000,000 Btu (mmbtu). See Ohio Adm.Code 4901:1–14–01(O).

adjustment of price of $1.44/Mcf—well below the commission's expectation. The commission approved the $1.44/Mcf adjustment to be added to the market price of natural gas to make up the standard service offer and authorized Dominion to contract with successful bidders.

## Standard of Review

{¶ 10} "R.C. 4903.13 provides that a PUCO order shall be reversed, vacated, or modified by this court only when, upon consideration of the record, the court finds the order to be unlawful or unreasonable." *Constellation NewEnergy, Inc. v. Pub. Util. Comm.*, 104 Ohio St.3d 530, 2004-Ohio-6767, 820 N.E.2d 885, ¶ 50. The court will not reverse or modify a PUCO decision as to questions of fact when the record contains sufficient probative evidence to show that the commission's decision was not manifestly against the weight of the evidence and was not so clearly unsupported by the record as to show misapprehension, mistake, or willful disregard of duty. *Monongahela Power Co. v. Pub. Util. Comm.*, 104 Ohio St.3d 571, 2004-Ohio-6896, 820 N.E.2d 921, ¶ 29, citing *AT&T Communications of Ohio, Inc. v. Pub. Util. Comm.* (2000), 88 Ohio St.3d 549, 555, 728 N.E.2d 371. The appellant bears the burden of demonstrating that the PUCO's decision is against the manifest weight of the evidence or is clearly unsupported by the record. Id. The court will also not reverse a commission order absent an appellant showing that it is harmed or prejudiced by the order. *Myers v. Pub. Util. Comm.* (1992), 64 Ohio St.3d 299, 302, 595 N.E.2d 873.

{¶ 11} Although we have "complete and independent power of review as to all questions of law" in appeals from the PUCO, *Ohio Edison Co. v. Pub. Util. Comm.* (1997), 78 Ohio St.3d 466, 469, 678 N.E.2d 922, we may rely on the expertise of a state agency in interpreting a law when "highly specialized issues" are involved and "where agency expertise would, therefore, be of assistance in discerning the presumed intent of our General Assembly." *Office of Consumers' Counsel v. Pub. Util. Comm.* (1979), 58 Ohio St.2d 108, 110, 12 O.O.3d 115, 388 N.E.2d 1370.

## Proposition of Law No. 1

{¶ 12} In the first proposition of law, OPAE alleges that the granting of the application was unlawful due to errors in the format of Dominion's application, and it attacks the adequacy of the process based on deviations from administrative rules in the underlying proceeding.

{¶ 13} Dominion filed its application with the PUCO as a tariff revision to change the method it used to purchase natural gas for its distribution customers. A tariff revision does not trigger the mandatory review process that a request for an exemption requires. The commission decided to entertain public comment, and thereafter, it determined that Dominion's application amounted to a request

for an exemption from R.C. 4905.302, which requires a stricter review pursuant to R.C. 4929.04. The PUCO did not require Dominion to file a new application, but instead allowed the proceeding to move forward on the existing docket with the existing parties.

{¶ 14} OPAE argues that the commission failed to follow a number of the procedural steps found in Ohio Adm.Code 4901:1–19–01 et seq. However, OPAE did not raise any of these arguments before the commission concerning noncompliance with Administrative Code provisions. The rehearing application does not mention Ohio Adm.Code 4901:1–19–02, the section governing the format for granting exemptions.

{¶ 15} According to R.C. 4903.10, rehearing applications "shall set forth specifically the ground or grounds on which the applicant considers the order to be unreasonable or unlawful." This court held in *Office of Consumers' Counsel v. Pub. Util. Comm.* (1994), 70 Ohio St.3d 244, 247, 638 N.E.2d 550, that "setting forth specific grounds for rehearing is a jurisdictional prerequisite for our review."

{¶ 16} OPAE also failed to include the arguments found in its first proposition of law in its notice of appeal. R.C. 4903.13 establishes that the appropriate avenue to seek reversal of a PUCO order is through a notice of appeal "setting forth the order appealed from and the errors complained of." The court lacks jurisdiction to consider arguments not included in a notice of appeal. *Cincinnati Gas & Elec. Co. v. Pub. Util. Comm.*, 103 Ohio St.3d 398, 2004-Ohio-5466, 816 N.E.2d 238, ¶ 21.

{¶ 17} OPAE also claims in its first proposition of law that Dominion should have filed its application as a request for an alternative rate plan under R.C. 4929.05. Again, however, OPAE failed to assert an argument based upon R.C. 4929.05 until it filed its merit brief in this court. The failure to raise the argument at rehearing and in its notice of appeal precludes this court from considering the argument.

{¶ 18} We conclude, therefore, that because OPAE failed to properly perfect the arguments made in the first proposition of law, we lack jurisdiction to consider them.

### Proposition of Law No. 2

{¶ 19} In its second proposition of law, OPAE argues that Dominion failed to sustain its burden of proving that it is eligible for an exemption pursuant to R.C. 4929.04(C), and therefore, the PUCO opinion is unlawful.

{¶ 20} The PUCO's findings, however, contain sufficient probative evidence to show that its decision was not manifestly against the weight of the evidence and was not so clearly unsupported by the record as to show misapprehension,

mistake, or willful disregard of duty. *Monongahela Power Co.*, 104 Ohio St.3d 571, 2004-Ohio-6896, 820 N.E.2d 921, ¶ 29. Accordingly, the order will not be reversed on this basis.

{¶ 21} The second proposition of law focuses on the argument that Dominion failed to sustain its burden of justifying an exemption under R.C. 4929.04. R.C. 4929.04(A) sets forth the procedural steps and substantive prerequisites for granting an exemption. The statute requires that upon the application of a natural gas company, after notice, a period for public comment, and a hearing, the PUCO shall exempt any commodity sales service of a natural gas company from certain provisions of R.C. Chapters 4905 and 4909 if the PUCO finds that the natural gas company substantially complies with the state policy specified in R.C. 4929.02. It is the policy guidelines in R.C. 4929.02(A) on which OPAE focused its arguments that Dominion failed to satisfy its burden of proof.

*Substantial Compliance with the Policy of R.C. 4929.02*

{¶ 22} In its appeal, OPAE argued that the PUCO lacked the authority to approve an exemption because Dominion failed to show that the application substantially complied with the policies set forth in R.C. 4929.02(A)(1) through (11).

{¶ 23} OPAE claims that Dominion provided only a declaration that the application and current market structure are consistent with the state policy and that the application will further the policy by fostering more competition. OPAE maintains that Dominion's declaration alone is not evidence and does not rise to the level of satisfying Dominion's burden of proof under R.C. 4929.04(C). The record supports the commission's finding that Dominion's application substantially complied with the policy set forth in R.C. 4902.02(A)(1) through (11).

{¶ 24} OPAE spends a majority of its argument asserting that Dominion failed to prove substantial compliance with the goal to "[e]ncourage innovation and market access for cost-effective supply- and demand-side natural gas services and goods" set forth in R.C. 4929.02(A)(4).

{¶ 25} The PUCO's order relied on Dominion's existing energy conservation programs and the effect of the anticipated competition on the market to encourage market access and demand-side services and goods. The PUCO noted in its order that a move to purer market pricing will provide customers with better comparative information to make more informed decisions about their commodity service alternatives, eliminate pricing distortions in the gas cost recovery system ("GCR") rate, and encourage conservation in response to more accurate price signals. Dr. Robert Lawson, a witness called by Dominion, testified, "The real advantage of market-based pricing is how market prices communicate information and proper incentives to buyers and sellers."

{¶ 26} In addition, both Dominion and the PUCO point out the value of the existing demand-side and conservation management programs fulfilling the policy goal of R.C. 4929.02(A)(4). Those programs amount to an annual expenditure of $3.5 million per year, a figure that Dominion committed to maintaining. Elizabeth Hernandez, a witness for OPAE, described the program as providing furnace repair and replacement energy audits, repair and replacement of other gas-fired appliances, and weatherization, including air sealing and insulation.

{¶ 27} The record supports the commission's finding that Dominion's application comports with the policy guidelines of the General Assembly as set forth in R.C. 4929.02. The policy established in R.C. 4929.02(A)(4) is a guideline for the commission to consider when entertaining requests for exemptions from regulation. Here, the commission weighed the cost-effective nature of Dominion's services and the current offering of demand-side natural gas services and goods. The commission reasonably found that the advantages added by a competitive market and the continuation of the $3.5 million conservation program satisfied the considerations set forth in R.C. 4929.04(A)(4).

{¶ 28} OPAE primarily focused upon R.C. 4929.02(A)(4), but it also challenged the other policy provisions set forth in R.C. 4929.02(A). Again, the commission found that Dominion was in substantial compliance with these policy provisions. The record supports the findings as to each one.

{¶ 29} OPAE contends that nothing in the record shows that Dominion's plan promotes the availability of adequate, reliable, and reasonably priced natural gas. See R.C. 4929.02(A)(1).

{¶ 30} The PUCO and Dominion, however, maintain that the record supports compliance with the policy goal of R.C. 4929.02(A)(1). PUCO staff witness Stephen Puican testified that Phase 1 was designed to ensure reliability of gas supplies in the event of supplier default. Dominion witness Jeffrey Murphy testified that suppliers will be required to meet the same reliability standards as Dominion, including proof of capacity and a plan to secure capacity for Dominion, should one or more Phase 1 suppliers fail to deliver enough gas to meet customer requirements. Dominion witness Dr. Lawson also testified that shortages are one possible result of non-market-based rates like the gas cost recovery system. Murphy explained that by minimizing exposure, the method of securing bids in separate tranches (slices or shares) mitigates the risk of any one supplier defaulting on its delivery obligations.

{¶ 31} Dominion also argues that the interim plan approved by the PUCO may result in a price lower than the traditional gas cost recovery price. Scott White, cofounder and president of Interstate Gas Supply, Inc., a certificated competitive retail natural gas supplier serving customers in five states, including Dominion's service area, testified for the gas suppliers. He stated, "[T]he GCR mechanism

* * * is not a good indicator of the current market cost of gas nor does it reflect the actual cost that the customer ends up paying for that period." And Dr. Lawson testified that regulatory agencies often set prices above competitive market rates. Moreover, the application of Phase 1 resulted in lower prices. Customers served under the standard service offer, established by Phase 1, paid less than they would have paid under the GCR process.

{¶ 32} The court is also satisfied that the commission relied on the record with adequate support for its finding that Dominion already satisfies the goals of R.C. 4929.02(A)(2) and (3). The policy goal of R.C. 4929.02(A)(2) is to promote the availability of unbundled gas services to meet consumer needs. The goal of R.C. 4929.02(A)(3) is to promote diversity of natural gas suppliers by giving consumers effective choices. The nature of this proceeding is to consider a regulatory scheme that promotes even greater participation by competitive gas suppliers.

{¶ 33} R.C. 4929.02(A)(7) requires a showing that the market can substitute for regulation. OPAE argued that Dominion failed to prove that a more competitive market will result from Phase 1 or Phase 2. The PUCO stated in its order that it was approving Phase 1 as a "measured progression" toward market pricing for commodity service "to test the ability of the new process to expand competition among suppliers and reduce rates in the long term." There are numerous examples in the record discussing the danger of the gas cost recovery rate in a competitive market reacting to the present-day commodity process, including price distortions and confusion. This type of pilot program tests those market theories in an effort to promote speedy transitions to effective competition. The statutory section also includes a reduction in regulation as part of the goal, and Dominion's approach reduces regulatory oversight on a pilot basis while permitting the commission to reassert itself if the pilot does not work.

{¶ 34} OPAE characterizes the remaining six policy goals of R.C. 4929.02(A)(5), (6), (8), (9), (10), and (11) as provisions "to protect consumers from any harmful effects of alternative regulation or exemptions, such as volatile gas prices." As noted in the discussion of R.C. 4929.02(A)(1), consumer safeguards are included to ensure safe and reliable service. Even beyond those protections, the PUCO established Phase 1 as a pilot, retaining the right to terminate the program and return to the gas cost recovery pricing methodology under R.C. 4905.302. The record contains sufficient evidence that these policy goals are satisfied here.

{¶ 35} Our conclusion is, therefore, that evidence in the record supports the commission's finding that the application was in substantial compliance with the policy guidelines of the General Assembly set forth in R.C. 4929.02. The PUCO weighed the evidence contained in the record and conditionally approved the application for Phase 1 and expressed its willingness to revoke the exemption upon its own motion or as the result of an R.C. 4905.26 complaint proceeding.

Based on that understanding and the evidence contained in the record, the court rejects OPAE's arguments with regard to this proposition of law.

## Proposition of Law III

{¶ 36} In its third proposition of law, OPAE argues that R.C. 4929.02(A)(4) and R.C. 4905.70 [2] both require the PUCO to approve demand-side management and energy conservation programs before granting an exemption from regulation under R.C. 4929.04. Specifically, OPAE claims that the programs advocated by its witness Elizabeth Hernandez, like bill payment assistance and weatherization services to reduce the demand of low-income customers, need funding increases. OPAE argues that the $3 million to $3.5 million established in the early 1990s is not adequate. However, nothing in either R.C. 4929.02(A)(4) or 4905.70 requires approval of these programs or the increased funding that OPAE demands.

{¶ 37} While R.C. 4929.04 refers to innovation and market access, it never mentions OPAE's programs, nor does it mention R.C. 4905.70. Moreover, nothing in R.C.4905.70 indicates that the legislature intended it to pertain to R.C. 4929.04 proceedings. These facts provide adequate grounds to reject this argument.

{¶ 38} OPAE's argument concerning R.C. 4929.04(A)(4) is a repackaging of its argument in its second proposition of law. As stated above, Dominion's current funding of $3.5 million dollars dedicated to housewarming and weatherization efforts, combined with the benefit of the pilot program studying future effects of its overall program, satisfies R.C. 4929.02(A)(4). Accordingly, this proposition of law is not well taken.

## Conclusion

{¶ 39} We recognize that Dominion's application for alternative treatment presented the commission with a Phase 1 and Phase 2 plan progression. This opinion addresses only Phase 1. We make no comment with regard to Phase 2, as that matter is not before us. Our review of the commission's approval of Phase 1 relies on the commission's statement that this is a pilot program allowing the commission to study the effects of the effort. We expect the commission to monitor the progress of the effort to ensure that consumers are protected.

{¶ 40} We recognize this pilot program as a significant step in changing the way natural gas companies ensure the availability of natural gas for all Ohio consumers. We expect the commission to carefully analyze the pilot program before permitting Dominion to move to Phase 2. Any effort to implement the next phase will require independent justification on the merits of that proposal.

---

2. R.C. 4905.70 requires the PUCO to promote and encourage energy conservation programs in general.

{¶ 41} Based upon the foregoing, we affirm the order of the Public Utilities Commission.

Order affirmed.

MOYER, C.J., and LUNDBERG STRATTON, O'CONNOR, LANZINGER, and CUPP, JJ., concur.

PFEIFER, J., concurs in judgment only.

———

Colleen L. Mooney and David C. Rinebolt, for appellant.

Marc Dann, Attorney General, Duane Luckey, Senior Deputy Attorney General, Anne L. Hammerstein, Deputy Attorney General, and William L. Wright and Steven L. Beeler, Assistant Attorneys General, for appellee.

Jones Day, Mark A. Whitt, David A. Kutik, and Andrew J. Campbell, for intervening appellee, East Ohio Gas Company, d.b.a. Dominion East Ohio.