[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *In re Application to Modify, in accordance with R.C. 4929.08, the Exemption Granted to E. Ohio Gas Co.*, Slip Opinion No. 2015-Ohio-3627.]

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports. Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2015-OHIO-3627

IN RE APPLICATION TO MODIFY, IN ACCORDANCE WITH R.C. 4929.08, THE EXEMPTION GRANTED TO EAST OHIO GAS COMPANY, D.B.A. DOMINION EAST OHIO, IN CASE NO. 07-1224-GA-EXM; OHIO PARTNERS FOR AFFORDABLE ENERGY, APPELLANT; PUBLIC UTILITIES COMMISSION ET AL., APPELLEES.

[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *In re Application to Modify, in accordance with R.C. 4929.08, the Exemption Granted to E. Ohio Gas Co.*, Slip Opinion No. 2015-Ohio-3627.]

*Public utilities—Commission had authority to modify its previous order and allow utility to stop providing a standard choice offer for its nonresidential customers—Orders affirmed.*

(No. 2013-0433—Submitted May 6, 2015, Decided September 8, 2015.)

APPEAL from the Public Utilities Commission of Ohio, No. 12-1842-GA-EXM.

_____

**O'NEILL, J.**

{¶ 1} Appellant, Ohio Partners for Affordable Energy ("OPAE"), an advocacy group that supports affordable-energy policies for low- and moderate-

income Ohioans, appeals from an order of the Public Utilities Commission of Ohio authorizing the East Ohio Gas Company, d.b.a. Dominion East Ohio ("Dominion"), to discontinue the availability of the standard choice offer for its nonresidential customers, thereby taking another step toward deregulation of the company's commodity-sales services. In order to take this step, the commission had to modify one of its previous orders. OPAE, representing its members who are nonresidential customers of Dominion, argues that the commission lacked statutory authority and an evidentiary basis to modify its previous order and also erred in adopting a stipulation that OPAE did not sign. For the reasons explained below, we affirm the commission's order.

### I. Factual and Procedural Background

### A. Phase one of Dominion's plan to exit the merchant function

{¶ 2} In 1996, the General Assembly passed legislation initiating deregulation of public utilities' natural-gas services, including allowing natural-gas companies to apply for an exemption from traditional "commodity-sales service" regulations. *See* R.C. 4929.04. A natural-gas company's "commodity-sales service" is the company's selling of natural gas to consumers, *see* R.C. 4929.01(C), and the parties in this case refer to this service as the utility company's "merchant function." And they refer to transitioning away from the business of selling natural gas as "exiting the merchant function."

{¶ 3} For the past decade, Dominion has been gradually moving away from its merchant function to focus more on its fundamental role as a distribution-service provider. In 2005, Dominion filed an application proposing to restructure its commodity-sales obligations for those customers who had not yet participated in the company's gas-choice program—i.e., those customers who had not yet "shopped" for natural-gas services from third-party retail suppliers. Dominion's proposal had two phases, which we summarized in *Ohio Partners for Affordable Energy v. Pub. Util. Comm.*, 115 Ohio St.3d 208, 2007-Ohio-4790, 874 N.E.2d

2

764. In phase one, Dominion proposed an interim wholesale model by which it would continue to provide commodity service using an auction process to obtain its wholesale gas supplies. In phase two, Dominion's stated goal was to transfer any remaining nonshopping customers to third-party retail suppliers. Thus, Dominion intended that by the end of phase two, its customers would be in direct business relationships with retail suppliers, rather than with Dominion. *Id.* at ¶ 2-5.

{¶ 4} In May 2006, the commission granted Dominion an exemption from traditional commodity-sales regulations so that it could implement phase one of its proposal. *In re Application of E. Ohio Gas Co. for Approval of Plan to Restructure Its Commodity Serv. Function*, Pub. Util. Comm. No. 05-474-GA-ATA (May 26, 2006). OPAE appealed, and in 2007, we affirmed the commission's decision. *Ohio Partners.*

### B. Phase two: the "standard choice offer" and the "2008 Exemption Order"

{¶ 5} In June 2008, the commission granted Dominion another exemption to begin phase two of its planned exit from the merchant function. *In re Application of the E. Ohio Gas Co. for Approval of a Gen. Exemption of Certain Natural Gas Commodity Sales Servs.*, Pub. Util. Comm. No. 07-1224-GA-EXM (June 18, 2008) (the "2008 Exemption Order"). In phase two, Dominion replaced its previous wholesale auction with a retail auction, and the natural-gas service based on this auction was called the "standard choice offer." Under the standard choice offer, Dominion continued to hold an auction for nonshopping customers, but the retailer that prevailed at auction supplied the commodity to the customers and that retailer's name was identified on the customer's bill. During the commission proceeding, Dominion stated that it intended this new auction process to facilitate direct business relationships between consumers and retailers. Additionally, Dominion intended that its final auction under the standard choice

offer would be for the service period ending in March 2011 and after that date, customers would be required to enter into direct sales relationships with a retailer or participate in a governmental aggregation program, if available in that customer's service area.

**C. The present proceeding: Dominion's request to modify the 2008 Exemption Order**

{¶ 6} As noted, Dominion had anticipated that phase two would result in its customers establishing direct contractual relationships with retailers. However, according to Dominion, it later became clear that some of its customers were not exercising their ability to shop for a retail supplier as long as the standard choice offer remained an option. Thus, in June 2012, Dominion, along with the Ohio Gas Marketers Group ("OGMG"), filed a joint motion to modify the 2008 Exemption Order under R.C. 4929.08(A), which authorizes the commission to modify a prior exemption order under specified conditions.

{¶ 7} In their joint motion, Dominion and OGMG requested that the commission authorize Dominion to discontinue the availability of the standard choice offer for its nonresidential customers. The joint movants proposed that (1) instead of the standard choice offer, nonresidential customers who had not yet selected a retail supplier would be assigned to receive service from a certified retail natural-gas supplier through a rotating list of such suppliers maintained by Dominion and (2) these nonresidential customers would take service from the retail suppliers at their then-applicable monthly variable rate, with the ability to switch to a different supplier or participate in a governmental aggregation program at any time.

{¶ 8} Dominion claimed that it decided to make this change for nonresidential customers because this group represented a comparatively small number of its customers, and the information that Dominion could glean from a merchant-function exit for these customers would provide valuable insight into

whether it would be appropriate to exit the merchant function for all its customers (nonresidential and residential). Dominion estimated that its plan would affect less than 20 percent of its nonresidential customers, which was only about 14,000 customers or 1.2 percent of its entire customer base. The other 80-plus percent of Dominion's nonresidential customers would not be affected, because they had already selected a retail supplier or were participating in a governmental aggregation program.

{¶ 9} Attached to the joint motion for modification was a stipulation signed by Dominion, OGMG, and the Ohio Consumers' Counsel ("OCC"). The stipulation set forth procedures for how Dominion would discontinue the auction process and assign customers to third-party retail suppliers. In addition, Dominion agreed that it would not apply to exit the merchant function for residential customers until April 2015, at the earliest. And during the interim, Dominion agreed, it will send data to the OCC about the effect of Dominion's exit from the merchant function on its nonresidential customers.

{¶ 10} OPAE opposed the joint motion, arguing that Dominion and OGMG had not met the statutory requirements to be entitled to a modification of a prior exemption order under R.C. 4929.08(A). The Retail Energy Supply Association thereafter intervened. Both OGMG and the Retail Energy Supply Association are organizations with natural-gas retail suppliers as members, and because the groups have submitted joint filings and are represented by the same counsel, we refer to these two organizations jointly as the "Marketers." The case proceeded to a hearing, at which witnesses for all sides testified as to whether the commission should modify the 2008 Exemption Order to discontinue the standard choice offer. In January 2013, the commission granted the requested modification, and after the commission denied OPAE's motion for rehearing, OPAE appealed to this court.

**II. Standard of Review**

**{¶ 11}** "R.C. 4903.13 provides that a [Public Utilities Commission's] order shall be reversed, vacated, or modified by this court only when, upon consideration of the record, the court finds the order to be unlawful or unreasonable." *Constellation NewEnergy, Inc. v. Pub. Util. Comm.*, 104 Ohio St.3d 530, 2004-Ohio-6767, 820 N.E.2d 885, ¶ 50. We will not reverse or modify a commission decision as to questions of fact when the record contains sufficient probative evidence to show that the commission's decision is not against the manifest weight of the evidence and is not so clearly unsupported by the record as to show misapprehension, mistake, or willful disregard of duty. *Monongahela Power Co. v. Pub. Util. Comm.*, 104 Ohio St.3d 571, 2004-Ohio-6896, 820 N.E.2d 921, ¶ 29. The appellant bears the burden of demonstrating that the commission's decision is against the manifest weight of the evidence or is clearly unsupported by the record. *Id.* Although this court has " 'complete and independent power of review as to all questions of law' " in appeals from the commission, *Ohio Consumers' Counsel v. Pub. Util. Comm.*, 121 Ohio St.3d 362, 2009-Ohio-604, 904 N.E.2d 853, ¶ 13, quoting *Ohio Edison Co. v. Pub. Util. Comm.*, 78 Ohio St.3d 466, 469, 678 N.E.2d 922 (1997), we may rely on the expertise of a state agency in interpreting a law where "highly specialized issues" are involved and "where agency expertise would, therefore, be of assistance in discerning the presumed intent of our General Assembly," *Consumers' Counsel v. Pub. Util. Comm.*, 58 Ohio St.2d 108, 110, 388 N.E.2d 1370 (1979).

**III. Law and Analysis**

**{¶ 12}** OPAE asserts that the commission's order violates two statutes. First, and primarily, OPAE argues that Dominion and the Marketers were not entitled to a modification of an exemption order under R.C. 4929.08(A), which provides:

> [T]he commission, upon its own motion or upon the motion of any person adversely affected by such exemption * * * may abrogate or modify any order granting such an exemption or authority only under both of the following conditions:
>
> (1) The commission determines that the findings upon which the order was based are no longer valid and that the abrogation or modification is in the public interest;
>
> (2) The abrogation or modification is not made more than eight years after the effective date of the order, unless the affected natural gas company consents.

{¶ 13} Second, OPAE claims that the order on appeal violates R.C. 4903.09, which requires the commission to file "findings of fact and written opinions setting forth the reasons prompting the decisions arrived at, based upon said findings of fact."

**A. Proposition of law No. 1**

{¶ 14} In its first proposition of law, OPAE argues that the commission "ignored" the actual findings of the 2008 Exemption Order and instead "rewrote" the prior order so that it could justify a determination that the order's findings were no longer valid under R.C. 4929.08(A)(1). OPAE's argument is based almost entirely on differences in wording between the 2008 Exemption Order and the commission's interpretation of that order in the underlying case. In the 2008 Exemption Order, the commission determined that "phase 2 represents a reasonable structure through which to further the potential benefits of market-based pricing of the commodity sales by the company." In the order on appeal here, the commission stated that this finding was no longer valid because "phase two no longer provides any potential for further exploration of the benefits of market-based pricing for natural gas services." OPAE claims that the commission

"deliberately mischaracterized" the findings in the 2008 Exemption Order by referring to "market-based pricing *for natural gas services*" instead of the actual language used in the 2008 order: "market based pricing of commodity sales *by the company*." (Emphasis added.) This language, according to OPAE, "is absolutely not the same thing," and the difference in wording is the "crux of the issue on appeal."

{¶ 15} Despite the significance that OPAE places on this difference in language, it has not adequately explained how the meaning of these two phrases differs or why the difference is important. OPAE appears to be arguing that the sentence from the 2008 Exemption Order demonstrates that the sole objective of that order was to implement the standard choice offer—that is, to introduce market-based pricing "by the company" (Dominion) through an auction process, thereby giving customers another supply option for natural gas. Nothing about that finding, according to OPAE, is now invalid. However, in order to modify the 2008 Exemption Order under R.C. 4929.08(A), OPAE argues, the commission had to "pretend" that the 2008 Exemption Order was supposed to bring about phase three—the next phase in Dominion's exit from the merchant function—so that it could find the prior order's findings invalid. According to OPAE, "nothing in the 2008 Exemption Order anticipates or contemplates Phase 3."

{¶ 16} OPAE's emphasis on one sentence from the 2008 Exemption Order takes that sentence out of context and is inconsistent with the stated purpose of phase two. A reading of the entire 2008 Exemption Order demonstrates that the intent of phase two was not simply to introduce the standard choice offer so that Dominion customers could purchase gas through that option indefinitely. The 2008 Exemption Order expressly states that Dominion was "requesting Commission approval of the second phase of the company's plan to exit the merchant function," which was an "intermediate step between phase 1 and [Dominion's] ultimate exit of the merchant function." 2008 Exemption Order at

6. The order goes on to state that Dominion intended phase two "to facilitate the process of choice-eligible customers establishing contractual relationships with a competitive retail natural gas service * * * provider prior to the time [Dominion] ceases providing commodity service to such customers." *Id.* The 2008 Exemption Order discussed only two planned auctions for the standard choice offer, after which Dominion would be required to seek commission approval "before moving from the [standard choice offer] commodity-service market to a market in which choice-eligible customers will be required to enter into a direct retail relationship with a supplier or governmental aggregator to receive commodity service." *Id.* at 13-15.

{¶ 17} Thus, OPAE's claim that the 2008 Exemption Order did not contemplate the next phase in Dominion's exit—and, instead, was merely meant to introduce the standard choice offer as an additional customer option—is not supported by a fair reading of the 2008 Exemption Order. The bottom line is that OPAE has not established that the commission "ignored," "deliberately mischaracterized," or "rewrote" any prior order to reach its decision in this case.

{¶ 18} Within proposition of law No. 1, OPAE also points to language in the 2008 Exemption Order stating that Dominion must file a "separate application in the future" to transition to a market in which customers would be required to enter into a direct sales relationship with retailers. OPAE claims that Dominion did not file a "separate application" here, but instead chose to file the joint motion for a modification under R.C. 4929.08(A), which according to OPAE, was "procedurally defective."

{¶ 19} OPAE has not proved, however, that Dominion's failure to file a "separate application"—rather than its motion to modify under R.C. 4929.08(A)—requires this court to reverse the commission's order. Both an application and a motion are formal requests seeking commission approval to take certain action, and the 2008 Exemption Order did not expressly require Dominion

to file an application under a specific statute. More importantly, OPAE has not demonstrated how it was prejudiced by the fact that Dominion filed its request as a motion to modify an exemption order under R.C. 4929.08(A), rather than through some other statutory process. For example, OPAE has not identified any procedural opportunity that it was denied by this case proceeding under R.C. 4929.08(A). "[T]his court will not reverse a commission order absent a showing by the appellant that it has been or will be harmed or prejudiced by the order." *Ohio Consumers' Counsel v. Pub. Util. Comm.*, 121 Ohio St.3d 362, 2009-Ohio-604, 904 N.E.2d 853, ¶ 12.

{¶ 20} Accordingly, we reject OPAE's first proposition of law.

**B. Proposition of law No. 2**

{¶ 21} In its second proposition of law, OPAE argues that the record does not support the commission's determination that the findings of the 2008 Exemption Order are no longer valid and therefore the commission violated R.C. 4929.08(A) and 4903.09. OPAE's argument is premised on its belief that the commission "ignored" and "rewrote" the 2008 Exemption Order to determine that its findings were no longer valid. Because the actual findings from the 2008 Exemption Order were valid, OPAE argues, there was no factual basis in the record for the commission's decision.

{¶ 22} As explained above, the commission did not rewrite the 2008 Exemption Order. Therefore, OPAE's evidentiary argument based on the same premise fails. And contrary to OPAE's assertion, the record here contained evidence supporting the commission's determination that the findings from the 2008 order were no longer valid. As the commission explained in its rehearing entry, witnesses testified that phase two no longer provided its intended benefits and the standard choice offer was potentially precluding the development of a fully competitive market. Thus, testimony in the record—cited by the

commission in the underlying orders—supports its ruling. We therefore reject this proposition of law.

### C. Proposition of law No. 3

{¶ 23} As noted above, R.C. 4929.08(A) states that any person "adversely affected" by a prior exemption order may file a motion for modification. In its third proposition of law, OPAE asserts that the commission erred by concluding that Dominion and the Marketers were "adversely affected" by the 2008 Exemption Order. Additionally, OPAE claims that the commission failed to cite the administrative rule regarding requests to modify exemption orders, which OPAE also argues justifies reversal.

{¶ 24} OPAE, however, has not established that the commission's decision was against the manifest weight of the evidence. *See Monongahela Power Co.*, 104 Ohio St.3d 571, 2004-Ohio-6896, 820 N.E.2d 921, ¶ 29 (appellant bears burden of proof on questions of fact). At the hearing, a Dominion witness testified that since 2005, Dominion has been taking steps to exit the merchant function and that because a core of nonresidential customers continued to rely on the default standard choice offer, Dominion's planned exit was being hindered. Similarly, witnesses for the Marketers explained how retailers and the public would benefit from a more competitive natural-gas market without a default sales service by the utility company. Thus, the commission heard sufficient evidence to conclude that continuation of the standard choice offer was adversely affecting Dominion and the Marketers, and OPAE has not otherwise established that the commission's finding here was so clearly unsupported by the record as to show misapprehension, mistake, or willful disregard of the facts.

{¶ 25} Finally, OPAE's notice of appeal did not cite an alleged violation of any administrative rule, and "[t]he court lacks jurisdiction to consider arguments not included in a notice of appeal." *Ohio Partners*, 115 Ohio St.3d

11

208, 2007-Ohio-4790, 874 N.E.2d 764, ¶ 16.  Accordingly, OPAE's third proposition of law is dismissed.

### D. Proposition of law No. 4

{¶ 26} In its fourth proposition of law, OPAE asserts that the commission violated R.C. 4929.08(A) and 4903.09 because the record does not support a conclusion that modification of the 2008 Exemption Order was in the public interest.  According to OPAE, elimination of the standard choice offer thwarts the public interest because its availability is consistent with state energy policy under R.C. 4929.02.

{¶ 27} OPAE, however, is requesting that we reweigh the evidence regarding whether modification was in the public interest, which is outside the scope of our function on appeal.  *Elyria Foundry Co. v. Pub. Util. Comm.*, 114 Ohio St.3d 305, 2007-Ohio-4164, 871 N.E.2d 1176, ¶ 39.  To support its argument, OPAE cites the testimony of its own witness, who concluded that elimination of the standard choice offer will take away a competitive option (an auction) and result in higher prices for those customers, which is contrary to state energy policy promoting diversity of supply options and reasonable prices.  Dominion and the Marketers, on the other hand, presented evidence indicating that Dominion's presence in the commodity-sales market was hindering competition and therefore contrary to state policy.  For example, a Dominion witness testified that discontinuing the standard choice offer would directly increase the entrance of customers into the commodity-sales market because the commission would be encouraging customers and retailers to enter into direct sales relationships, and customers will then have the incentive to carefully review the options available to them and determine which option is best for them.  Similarly, a witness for the Marketers testified that in a competitive market, suppliers will be constantly searching for efficient ways to supply natural gas and

that competition will not be based solely on price, but also on the development of new products and services.

**{¶ 28}** After hearing this testimony, the commission determined that the requested modification furthered state energy policy by providing for an expeditious transition to the provision of natural-gas services in a manner that achieves effective competition and transactions between willing buyers and willing sellers and by encouraging innovation, both in how services are provided and in the variety of available products. Additionally, the commission determined that customers will be protected during this transition. Whether the commission's findings will ultimately be correct is an open question, but "[t]his court has consistently refused to substitute its judgment for that of the commission on evidentiary matters." *Monongahela Power Co.*, 104 Ohio St.3d 571, 2004-Ohio-6896, 820 N.E.2d 921, ¶ 29.

**{¶ 29}** Additionally, this is a case in which we should defer to the commission's findings. The General Assembly determined that the commission must consider state energy policy in deciding whether a proposed modification is in the public interest under R.C. 4929.08(A). *See* R.C. 4929.02(B). Whether Dominion's requested modification is consistent with policy objectives—such as whether discontinuation of the standard choice offer will encourage innovation, R.C. 4929.02(A)(4), or help achieve effective competition and transactions between willing buyers and willing sellers, R.C. 4929.02(A)(7)—are issues best suited for the regulatory agency assigned to implement state policy. Thus, given the commission's duty and authority to enforce these competition-encouraging statutes and policies, we accord due deference to the agency's ability to determine how best to further a competitive natural-gas market. *See Ohio Consumers' Counsel v. Pub. Util. Comm.*, 125 Ohio St.3d 57, 2010-Ohio-134, 926 N.E.2d 261, ¶ 40 ("The General Assembly left it to the commission to determine how best to carry out the state's policy goals in R.C. 4929.02(A)(4) and 4905.70");

*Payphone Assn. v. Public Util. Comm.*, 109 Ohio St.3d 453, 2006-Ohio-2988, 849 N.E.2d 4, ¶ 25 ("As the agency with the expertise and statutory mandate to implement the statute, the [Public Utilities Commission] is entitled to deference").

**E. Proposition of law No. 5**

{¶ 30} In its final proposition of law, OPAE asserts that the commission acted unreasonably and unlawfully by treating "a contested case as a settled case" when the "stipulation does not address the contested issues in the case." According to OPAE, the stipulation was "irrelevant" because it did not address all of the contested issues. In addition, OPAE claims that the stipulation was not a "product of serious bargaining," because it was not signed by any party representing nonresidential customers.

{¶ 31} For the following reasons, we reject this proposition of law. First, the commission did not treat this as a "settled case." The record shows that some parties entered into a stipulation, and although OPAE was invited to participate in the negotiations that led to the stipulation, it decided not to. The case subsequently went to a full hearing with OPAE as the only party opposing the joint motion. OPAE has not identified any procedural right or opportunity that it was denied during the hearing. In the order that is on appeal, the commission first addressed OPAE's opposition arguments to the modification. After rejecting OPAE's arguments, the commission then moved to its analysis of whether to adopt the stipulation. Contrary to the impression given in OPAE's brief, the commission's order does not suggest that the stipulation resolves all the contested issues in the case.

{¶ 32} Second, the stipulation was not irrelevant. The issues resolved in the stipulation may not be significant to OPAE, but they were important issues to the parties that signed the stipulation. The fact that the stipulation did not resolve all of OPAE's opposition arguments does not mean that the commission's approval of the stipulation was unlawful.

**{¶ 33}** Finally, as to OPAE's claim that the commission erred in holding that the stipulation was the "product of serious bargaining," OPAE did not raise this specific argument in its notice of appeal. We therefore lack jurisdiction to consider it now. *Ohio Partners*, 115 Ohio St.3d 208, 2007-Ohio-4790, 874 N.E.2d 764, ¶ 16.

**IV. Conclusion**

**{¶ 34}** For the foregoing reasons, we affirm the commission's order. In doing so, we rely on the commission's stated willingness to reestablish the standard choice offer if it later determines that Dominion's exit from the merchant function is unjust or unreasonable for any customer class. We also rely on the commission's rationale that discontinuation of the standard choice offer for this small subset of customers will allow the commission to study the effects of the company's exit from the merchant function, while still protecting customers. We expect the commission to continue to monitor the effects of Dominion's exit from the merchant function for nonresidential customers and carefully analyze the data. Our decision today approves only the limited proposal here, based on the record before us. Any effort by Dominion to implement the next step in its planned exit from the merchant function—or any effort by a different utility company to alter its commodity-sales obligations—will require independent justification based on the merits of that future proposal.

Orders affirmed.

O'CONNOR, C.J., and O'DONNELL, LANZINGER, KENNEDY, and FRENCH, JJ., concur.

PFEIFER, J., dissents.

_____

**PFEIFER, J., dissenting.**

**{¶ 35}** This court today defers to the Orwellian conclusion of the Public Utilities Commission of Ohio ("PUCO") that only by removing competition can

Ohio have a fully competitive marketplace for the sale of natural gas. The approximately 20 percent of choice-eligible commercial customers of intervening appellee East Ohio Gas Company, d.b.a. Dominion East Ohio ("Dominion") that used standard choice offer ("SCO") service to purchase their natural gas—a service tied to prices derived from the New York Mercantile Exchange and thus tied to the true market price of the commodity—will be instead forced into a relationship with a retail dealer. Gas marketers get a customer without having to persuade the customer that the marketer is the right choice for the particular user. That is not competition; that is coercion.

{¶ 36} PUCO issued the order in this case under the authority of R.C. 4929.08(A), which provides that PUCO "upon its own motion or upon the motion of any person adversely affected by [an] exemption * * * may abrogate or modify any order granting such an exemption" under certain conditions. The conditions cited by PUCO in this case are those contained in R.C. 4929.08(A)(1), which allows modification of the order when "[t]he commission determines that the findings upon which the order was based are no longer valid and that the abrogation or modification is in the public interest." In this case, I would find that neither condition set forth in R.C. 4929.08(A)(1) is applicable.

{¶ 37} As for the first condition, PUCO found that the exemption contained findings that were no longer valid, determining that "phase two no longer provides any potential for further exploration of the benefits of market-based pricing for natural gas services" and was "hindering the development of a fully competitive marketplace." Pub. Util. Comm. No. 12-1842-GA-EXM, at 8 (Jan. 9, 2013). This was at a point when over 80 percent of Dominion's nonresidential customers had chosen a competitive retail natural-gas supplier or to participate in a government-aggregation program. But it is apparent from the original order that phase two was never expected to complete the exit of Dominion from the merchant function. PUCO anticipated that further action

would be necessary, and it let Dominion know that that action would require a separate application:

> Dominion must seek, through a separate application in the future, Commission approval before moving from the SCO commodity service market to a market in which choice-eligible customers will be required to enter into a direct retail relationship with a supplier or governmental aggregator to receive commodity service, i.e., full-choice commodity service market.

*In re Application of the E. Ohio Gas Co. for Approval of a Gen. Exemption of Certain Natural Gas Commodity Sales Servs.*, Pub. Util. Comm. No. 07-1224-GA-EXM, at 15 (June 18, 2008).

{¶ 38} It was accepted as fact that phase two was not going to finish the job and that a third phase would be necessary. That phase two would plateau was baked into the cake. There has been no change in the validity of PUCO's findings: it was clear in the order that phase two would fall short.

{¶ 39} Further, the modification of the order is not in the public interest. It is in the interest of Dominion and marketers. The SCO is comparatively popular. It is an option for entities that do not want to make a decision on a natural-gas provider, those who do not want to enter into a contract, and those who trust the market price rather than a marketer's price. The SCO price stands as a benchmark for fairness for customers who have entered arrangements with marketers. It lessens concern among customers that marketers will form a price-fixing cabal, since the SCO price is tied to what the market is for natural gas. It builds trust in the entire system. Plus, as a practical matter, SCO service has proved to be cheaper than other service.

**{¶ 40}** The modification of the order makes commercial users guinea pigs for Dominion's eventual withdrawal from the merchant function for residential customers. Knowing the difficulty it will face in achieving a mandatory requirement that residential customers engage with a marketer, this modification is an attempt by Dominion and marketers to get to that requirement incrementally. No doubt, natural-gas marketers will be on their best behavior until the mother lode of residential customers becomes available for forced relationships. After that, the inertia of customers who are reluctant to make a choice—or to wade through the blizzard of postcard solicitations of natural-gas marketers—will be considered a good thing by the entity lucky enough to have gained their business.

_____

Colleen L. Mooney and David C. Rinebolt, for appellant.

Michael DeWine, Attorney General, William L. Wright, Section Chief, and Steven L. Beeler, Assistant Attorney General, for appellee, Public Utilities Commission of Ohio.

Whitt Sturtevant, L.L.P., Mark A. Whitt, Andrew J. Campbell, and Gregory L. Williams, for intervening appellee the East Ohio Gas Company.

Vorys, Sater, Seymour & Pease, L.L.P., M. Howard Petricoff, Stephen M. Howard, and Michael J. Settineri, for intervening appellees the Ohio Gas Marketers Group and the Retail Energy Supply Association.

Bruce J. Weston, Larry S. Sauer, and Joseph P. Serio, for amicus curiae Ohio Consumers' Counsel.

_____